# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 14-CR-0024-CVE |
| MICHAEL MEDLOCK, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court are Defendant's Motion to Dismiss (Dkt. # 14) and Defendant's Motion for Early Disclosure of Jencks Material (Dkt. # 16). Defendant argues that the indictment (Dkt. # 2) fails to state an offense against him and that the indictment violates the Tenth Amendment. Dkt. # 14. He requests that the government be required to disclose Jencks Act materials and Brady materials ten days prior to trial. Dkt. # 16.

## I.

On February 3, 2014, a grand jury returned an indictment charging defendant with fifteen counts of bank fraud in violation of 18 U.S.C. § 1344(1), and three counts of money laundering in violation of 18 U.S.C. § 1957(a). Dkt. # 2.[1] The indictment alleges that defendant both owned and controlled Klutts Equipment, Inc. (Klutts) and Vincens Omnibus, LLC (VOL). Dkt. # 2, at 1. It alleges that ONB Bank & Trust Company (ONB) was a financial institution that did business in the Northern District of Oklahoma, engaged in activities that affected interstate commerce, and had accounts that were insured by the Federal Deposit Insurance Corporation. Id. It alleges that ONB

---

[1] The indictment also contains a forfeiture allegation. Dkt. # 2, at 5.

lent money to VOL and Klutts, the collateral for which loans included the inventory, equipment, fixtures, contract rights, and accounts of VOL and Klutts. Id. It alleges that defendant agreed, as part of these transactions with ONB, "that all Klutts' account receivable payments would be deposited into a specific bank account at ONB [lockbox account]" and that both ONB and defendant controlled the lockbox account. Id. at 1-2. The indictment further alleges that:

> From on or about December 6, 2007, to on or about April 13, 2011, in the Northern District of Oklahoma [defendant] knowingly devised and intended to devise a scheme and artifice to defraud ONB . . . . It was an object of the [s]cheme for [defendant] to divert account receivable payments from ONB and use them for his own personal benefit. The [s]cheme caused a loss to ONB of over $2,000,000.

Id. at 2.

The indictment alleges that defendant executed the scheme by using the following manner and means. Id. Defendant would and did set up and maintain at least two bank accounts at Bank of Oklahoma (BOK), into which he "deposited, and caused to be deposited Klutts' account receivable payments" without ONB's knowledge and consent. Id. Defendant did not "pay over and account for these accounts receivable payments to ONB." Id. Defendant "would and did set up and maintain at least three bank accounts at IBC bank, also known as International Bank of Commerce [IBC]," into which he "deposited, and caused to be deposited, account receivable payments" without ONB's knowledge and consent. Id. at 2-3. Defendant "failed to pay over and account for these accounts receivable payments to ONB." Id. at 3. Defendant "would and did make various materially false and misleading statements to ONB, including falsely representing that all of Klutts' accounts receivable payments were being deposited into the [lockbox account]." Id. The indictment also alleges that, to execute the scheme and in attempting to do so, defendant caused payments "to

2

be sent to bank accounts located at BOK and IBC to conceal his receipt of the payments from ONB"[2] and lists fifteen of those payments. Id. at 3-4.

The indictment also alleges that:

> On or about August 12, 2009, in the Northern District of Oklahoma, [defendant] did knowingly engage, and attempt to engage, in a monetary transaction by, through, and to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of approximately $25,136 from [BOK] account ending 0399 to Boston College, such property having been derived from a specified unlawful activity, that is, bank fraud.

Id. at 6. Additionally, the indictment alleges that:

> On or about December 29, 2009, in the Northern District of Oklahoma, [defendant] did knowingly engage, and attempt to engage, in a monetary transaction by, through, and to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of approximately $24,515 from [BOK] account ending 0399 to Boston College, such property having been derived from a specified unlawful activity, that is, bank fraud.

Id. at 7. Finally, the indictment alleges that:

> On or about October 25, 2010, in the Northern District of Oklahoma, [defendant] did knowingly engage, and attempt to engage, in a monetary transaction by, through, and to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, check number 50122 from IBC account number ending 2702 in the amount of $16,500 paid to Jim Norton Toyota, such property having been derived from a specified unlawful activity, that is, bank fraud.

Id. at 8.

The jury trial is set for July 28, 2014. Dkt. # 12. Defendant has filed a motion to dismiss the indictment on the grounds that it fails to state an offense against him and violates the Tenth

---

[2] It is assumed that this is a misplaced modifier, and that the intent of this allegation is that defendant intended to conceal from ONB his receipt of the payments and not that the payments were from ONB.

3

Amendment. Dkt. # 14. He has also filed a motion requesting that the Court compel the government to disclose Jencks Act materials and Brady materials ten days prior to trial. Dkt. # 16.

**II.**

Under Fed. R. Crim. P. 12(b)(3), a defendant may file a motion "alleging a defect in the indictment" at any time while the case is still pending. In ruling on a motion to dismiss for failure to state an offense, the Court must consider only if the allegations of the indictment, if accepted as true, state an offense against the defendant. United States v. Todd, 446 F.3d 1062, 1068 (10th Cir. 2006). "[A]n indictment is considered sufficient 'if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy challenge.'" United States v. Barrett, 496 F.3d 1079, 1092 (10th Cir. 2007) (quoting Todd, 446 F.3d at 1067). "[I]t is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." United States v. Doe, 572 F.3d 1162, 1173 (10th Cir. 2009) (quoting United States v. Redcorn, 528 F.3d. 727, 733 (10th Cir. 2008)) (alteration in original). "The test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to the minimal constitutional standards." United States v. Gama-Bastidas, 222 F.3d 779, 785 (10th Cir. 2000) (quoting United States v. Fitzgerald, 89 F.3d 218, 222 (5th Cir. 1996)).

## III.

### A. Failure to State an Offense

### 1. Bank Fraud

Defendant argues that the indictment fails to set forth the crime of bank fraud. Dkt. # 14, at 2-20. The elements of bank fraud in violation of 18 U.S.C. § 1344(1) are: "(1) the defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution; (2) the defendant had the intent to defraud a financial institution; and (3) the bank involved was federally insured." United States v. Flanders, 491 F.3d 1197, 1212 (10th Cir. 2007). Defendant argues that an additional element is that defendant "either took or intended to take any funds belonging to ONB." Dkt. # 14, at 8. Defendant cites United States v. Chandler, 98 F.3d 711 (2d Cir. 1996); United States v. Leahy, 445 F.3d 634 (3rd Cir. 2006), abrogated by Loughrin v. United States, No. 13-316, 2014 WL 2807180 (U.S. June 23, 2014); United States v. McCauley, 253 F.3d 815 (5th Cir. 2001); and United States v. Doke, 171 F.3d 240 (5th Cir. 1999), in support of this argument. Id. at 10-11. Chandler does not support defendant's argument; it made clear that (contrary to a district court's instruction) section 1344(1) requires only that the government prove that the purpose of the defendant's scheme was to defraud and does not require that the purpose of the scheme be to "obtain money or funds from or under the control of a financial institution." 98 F.3d at 714. Neither do McCauley or Doke; both cases merely state that an offender's purpose in defrauding a financial institution is "ordinarily for the purpose of causing some financial loss or bring about some financial gain to himself," as the indictment alleges in this case. McCauley, 253

5

F.3d at 819 (quoting Doke, 171 F.3d at 243) (internal quotation marks omitted);[3] Doke, 171 F.3d at 243 (quoting United States v. Hanson, 161 F.3d 896, 900 (5th Cir. 1998)); see also Dkt. # 2, at 2-4 (describing a scheme wherein defendant would divert money intended for the lockbox account into his own accounts, thereby causing a risk of financial loss to ONB and a financial gain to himself). Leahy's requirement that defendant take or intend to take funds belonging to a financial institution relies on reading section 1344(1) and section 1344(2) in the conjunctive. 445 F.3d at 642-43. The Supreme Court has recently rejected a conjunctive reading of the statute. See Loughrin v. United States, No. 13-316, 2014 WL 2807180 (U.S. June 23, 2014). Given that the Supreme Court has mandated a disjunctive reading of section 1344, it would be odd to incorporate this additional element into section 1344(1), as that would be tantamount to adopting a conjunctive reading. This Court holds that the crime of bank fraud under section 1344(1) does not include the element of obtaining funds from a financial institution.

The indictment clearly sets forth the elements of bank fraud under section 1344(1). The indictment states that defendant knowingly devised a scheme to defraud a financial institution and that defendant executed, and attempted to execute, the scheme. Dkt. # 2, at 2-3. The indictment states that defendant knowingly and intentionally devised the scheme to defraud ONB. Id. at 2. The indictment states that the bank was federally insured. See id. at 1 ("The accounts of ONB were insured by the Federal Deposit Insurance Corporation.").[4] Likewise, defendant has been put on fair

---

[3] While McCauley does state that a scheme to defraud "includes using false pretenses or representations to obtain money from the institution to be deceived," it does not state that the a scheme to defraud includes only "using false pretenses or representations to obtain money from the institution to be deceived." 253 F.3d at 819.

[4] The indictment also states that defendant's alleged execution of the scheme occurred in the Northern District of Oklahoma. Dkt. # 2, at 3.

notice of the charges against him; the indictment identifies which bank he allegedly defrauded, what agreements he allegedly had with the bank, a number of the accounts into which he allegedly deposited money, an example of a materially false and misleading statement he is alleged to have made, and the fifteen payments he allegedly sent to the previously identified bank accounts to execute the scheme. Id. at 1-4. Defendant has also been given sufficient information to assert a double-jeopardy challenge, should one exist. Therefore, the indictment is sufficient and survives defendant's motion to dismiss. See Barrett, 496 F.3d at 1092 ("[A]n indictment is considered sufficient 'if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy challenge.'") (quoting Todd, 446 F.3d at 1067).

Relatedly, defendant argues, citing United States v. Thomas, 315 F.3d 190 (3rd Cir. 2002), abrogated by Loughrin v. United States, No. 13-316, 2014 WL 2807180 (U.S. June 23, 2014), that the defendant's alleged scheme is not a scheme to defraud a financial institution because defendant did attempt to take any of ONB's money. Dkt. # 14, at 8-9. The test as stated in Thomas is not, as implied by defendant, that a scheme to defraud requires the accused to have taken money belonging to a bank. See id.. Rather, the accused need only cause a bank to suffer "an actual or potential loss of its own funds." Thomas, 315 F.3d at 206; see also United States v. Young, 952 F.2d 1252, 1257 (10th Cir. 1991) ("To support a § 1344 conviction the government does not have to prove the bank suffered any monetary loss, only that the bank was put at potential risk by the scheme to defraud."). In Thomas, the accused was primarily attempting to steal from a bank customer (the deception of the bank was merely incidental), and the court held that, because the bank did not suffer a potential loss of its own funds due to the defendant's actions, the government failed to establish the elements

7

of bank fraud. 315 F.3d at 194, 200, 206. Here, ONB is the direct target of the alleged fraud, and the alleged fraud exposed ONB to a potential loss of its own funds if Klutts or VOL defaulted on their loans because collateral had been diverted from the lockbox account.[5] See Dkt. # 2. Those alleged facts are sufficient to meet the tests of Thomas and Young.

Defendant argues that he merely defaulted on a loan and that this default cannot constitute a scheme to defraud a financial institution. Dkt. # 14, at 7.[6] "The government agrees that simply not paying back a bank loan does not constitute bank fraud." Dkt. # 17, at 2. However, the indictment does not merely allege that defendant has not repaid a bank loan. Rather, the indictment states that defendant devised and executed a scheme to defraud ONB and in doing so made "various materially false and misleading statements to ONB." Dkt. # 2, at 2-4. This is sufficient to prevent the indictment from being facially invalid. See Doe, 572 F.3d at 1173; see also United States v. Dunn, 841 F.2d 1026, 1030 (10th Cir. 1988) (stating that a defendant "is 'not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case.'") (quoting United States v. Giese, 597 F.2d 1170, 1181 (9th Cir. 1979)).

Defendant cites Brown v. Unites States, 143 F. 60, 62 (8th Cir. 1906), for the proposition that the crime of bank fraud must be plead with particularity. Dkt. # 14, at 11-12. While the alleged crime in Brown was mail fraud, the Eighth Circuit does require bank fraud under section 1344(1) to be plead with particularity as well. See United States v. Steffen, 687 F.3d 1104, at 1113 (8th Cir. 2012); Brown, 143 F. at 62. Under Steffen, an indictment that alleges the crime of bank fraud must

---

[5] This also disposes of defendant's argument that the indictment does not demonstrate that ONB faced a risk of loss. Dkt. # 14, at 17-18.

[6] Defendant invokes the rule of lenity in making this argument. Dkt. # 14, at 20.

8

"specify facts 'not merely in the general words of the statute, but with such reasonable particularity . . . as will . . . apprise [the defendant], with reasonable certainty, of the nature of the accusation . . . and as will enable the court to say that the facts stated are sufficient in law to support a conviction.'" 687 F.3d at 1113 (quoting Brown, 143 F. at 62) (alterations in original). While the Tenth Circuit also requires mail fraud schemes to be plead with particularity, see United States v. Schuler, 458 F.3d 1148, 1152 (10th Cir. 2006), it does not appear to have held that bank fraud must be plead with particularity as well. However, the indictment in this case meets the particularity standard set out in Steffen. It states sufficient facts to apprise defendant of the nature of the accusation and to enable this Court to say that the facts stated are sufficient to support a conviction.

Defendant argues that nondisclosure, as opposed to express misrepresentation or fraudulent concealment, cannot, in the absence of an independent duty to disclose, constitute fraud. Dkt. # 14, at 13-14. This argument is inapposite, as the indictment does not merely allege that defendant failed to disclose information; it alleges that defendant made "various false and misleading statements to ONB." Dkt. # 2, at 3.

Defendant implies that his activity is purely local in nature and that Congress did not intend to include his conduct within the ambit of the federal bank fraud statute. Dkt. # 14, at 4. Defendant argues that Bond v. United States, 134 S. Ct. 2077 (U.S. 2014), and the rule of lenity both require that the statute be interpreted in a manner that excludes his conduct from censure.[7] Id. at 2-4, 17. The Supreme Court reaffirmed in Bond the principle that a statute should not be interpreted as

---

7   Defendant's somewhat related argument that the definition of a scheme to defraud must track the common law appears to be confined to his argument that express misrepresentation is generally required. See Dkt. # 14, at 12-13. As discussed supra, this argument is inapposite because express misrepresentation is alleged.

9

reaching purely local crimes, absent clear indication from Congress that it intended the statute to do so. 134 S. Ct. at 2090. The scheme alleged in the indictment is not the type of local crime that traditionally concerns only States; it is an attempt to defraud a financial institution, which implicates a pertinent federal interest. See Loughrin, 2014 WL 2807180, at *8 (stating that the accused's federalism argument--that an additional element is needed to prevent section 1344(2) from punishing "run-of-the-mill frauds, properly of concern only to States"--"collapses" because "the text of § 1344(2) already limits its scope to deceptions that have some real connection to a federally insured bank, and thus implicate the pertinent federal interest."); see also S. Rep. 98-225, at 378 (stating that "jurisdiction is based on the fact that the victim of the offense is a federally controlled or insured institution"). Bond is thus inapplicable. Defendant's appeal to the rule of lenity is that the term "scheme" is ambiguous. Dkt. # 14, at 17. Luckily, the Tenth Circuit has provided guidance on what constitutes a scheme. "The phrase 'scheme or artifice to defraud' simply requires a design, plan, or ingenious contrivance or device to defraud." United States v. Gallant, 537 F.3d 1202, 1223 (10th Cir. 2008) (quoting United States v. Flanders, 491 F.3d 1197, 1212 (10th Cir. 2007)) (internal quotation marks omitted). "'The broad range of schemes covered by the statute is limited only by a criminal's creativity.'" Id. (quoting United States v. Norton, 108 F.3d 133, 135 (7th Cir. 1997)). The scheme alleged in the indictment certainly falls within this broad definition adopted by the Tenth Circuit.

Defendant also states that "to 'defraud' a bank one would have to commit the 'crime of obtaining money by tricking someone.'" Dkt. # 14, at 19 (quoting an unknown edition of Webster's New International Dictionary). Even assuming that defendant's contention is correct, the indictment has alleged just this. The indictment states that defendant has obtained money for his own use to

10

which he would not otherwise be entitled (i.e., the accounts receivable payments that should have been deposited into the lockbox account) by "tricking someone" (i.e., though his misrepresentations to ONB, which erroneously lead ONB to believe that all accounts receivable payments were being deposited into the lockbox account). Each of defendant's objections to the indictment's bank fraud counts is without merit, and defendant's motion should be denied on those grounds.

## 2. Money Laundering

Defendant also argues that, because the government has failed to properly allege the offense of bank fraud in the indictment, the indictment does not properly state the offense of money laundering.[8] Dkt. # 14, at 20-24. As discussed supra, the indictment properly states the offense of bank fraud. Defendant's motion should be denied on this ground.

## B. The Tenth Amendment

Defendant argues, very briefly, that the indictment violates the Tenth Amendment. Dkt. # 14, at 24.[9] Federally-insured financial institutions are instrumentalities and channels of interstate commerce. United States v. Robinson, 389 F.3d 582, 594 (6th Cir. 2004); United States v. Watts, 256 F.3d 630, 634 (7th Cir. 2001); United States v. Harris, 108 F.3d 1107, 1109 (9th Cir. 1997); see also United States v. Spinello, 265 F.3d 150, 158 (3rd Cir. 2001). Thus, Congress may pass statutes regulating and protecting them. U.S. Const. art. 1, § 8, cl. 3; United States v. Lopez, 514 U.S. 549,

---

[8] The elements of money laundering under 18 U.S.C. § 1957 are that the defendant "(1) engaged or attempted to engage, (2) in a monetary transaction, (3) in criminally derived property, (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from specified unlawful activity." United States v. Dazey, 403 F.3d 1147, 1163 (10th Cir. 2005).

[9] It is possible that defendant is merely reiterating his argument that his actions were, at most, a local crime.

558 (1995) ("First, Congress may regulate the use of the channels of interstate commerce. . . . Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"). Section 1344 regulates and protects federally-insured financial institutions and is thus a proper use of Congress' Commerce Clause power. The indictment's bank-fraud charges allege that defendant defrauded a federally-insured financial institution and, thus, are not contrary to the Tenth Amendment. See Dkt. # 2, at 1-4. Additionally, 18 U.S.C. § 1957 requires that the underlying monetary transaction be "in or affecting interstate or foreign commerce." 18 U.S.C. § 1957(f)(1). Congress may regulate these transactions. U.S. Const. art. 1, § 8, cl. 3; Lopez, 514 U.S. at 558-59 ("Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.") (citations omitted). None of the charges in the indictment is beyond Congress's Commerce Clause power or runs afoul of the Tenth Amendment. Defendant's motion should be denied on this ground.

**C. Disclosure of Jencks Act and Brady Material**

Defendant has filed a motion in which he requests that the Court compel the government to disclose Jencks material ten days prior to trial. Dkt. # 16. The motion also states that "[p]ursuant to Brady v. Maryland[, 373 U.S. 83 (1963),] the government is obligated to disclose exculpatory evidence without undue delay," and that if any additional Brady materials "develop through the course of trial the Government should seek to produce those materials three days prior to the testimony of the related witness or as soon as practicable." Id. at 3-4. The government responds that, while it is not required to provide Jencks material until after a witness has testified, it will

12

provide such material prior to trial. Dkt. # 19, at 1-2. The government also states that it has "provided the defense with approximately 3,499 pages of discovery" and "anticipates providing additional discovery to the defense as it becomes available." Id. at 1. It further states that it "has exceeded its discovery obligations and intends to continue to do so." Id.

Under the Jencks Act, 18 U.S.C. § 3500, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." "The object of the Jencks Act was not only to protect Government files from unwarranted disclosure but also to allow defendants materials usable for the purposes of impeachment." United States v. Smaldone, 544 F.2d 456, 461 (10th Cir. 1976). The government's duty of disclosure arises once a government witness has testified, and the government has no obligation to produce a witness' statements to a defendant before trial. United States v. Nevels, 490 F.3d 800, 803 (10th Cir. 2007); United States v. Correa, No. 12-cr-00324-REB, 2013 WL 1871872, at *3 (D. Colo. May 6, 2013); United States v. Lujan, 530 F. Supp. 2d 1224, 1232 (D.N.M. 2008). However, some courts have fashioned procedures for pretrial disclosure of Jencks Act material when the government agrees to produce statements before trial. Lujan, 530 F. Supp. 2d at 1254. The Tenth Circuit has stated that "Jencks Act disclosures before trial greatly facilitate the trial proceedings" and "[a]greements for pretrial disclosure are common and encouraged." United States v. Mavrokordatos, 933 F.2d 843, 847 (10th Cir. 1991). The Jencks Act does not grant a federal district court the authority to compel early disclosure of Jencks Act material, and early disclosure of this material is permitted only when the government agrees to produce the material before trial. United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001); United States v.

13

Bonventure, No. 10 Cr. 228(LTS), 2013 WL 2303726 (S.D.N.Y. May 28, 2013); Lujan, 530 F. Supp. 2d at 1254; United States v. Tarantino, 846 F.2d 1384, 1414-15 (D.D.C. 1988).

The Court finds that defendant's motion for early disclosure of Jencks Act material should be denied to the extent that defendant is seeking production of Jencks Act material more than ten days before trial. The Jencks Act expressly states that a defendant may compel the disclosure of a witness' statements only after the witness has testified at trial, and defendant has cited no authority suggesting that a district court may require earlier disclosure without the government's agreement. The government has agreed to produce Jencks Act material prior to trial, and this should be sufficient to avoid unnecessary delays at trial. Even if defendant would prefer earlier disclosure of Jencks Act material, the purpose of the Jencks Act is to allow impeachment of a government witness and not to assist the defendant with his preparation for trial or the drafting of motions in limine. The Court again encourages the parties to confer and reach an agreement concerning the timing and manner of the government's production of Jencks Act material in order to expedite the trial of this matter, but the Court may not order the government to produce Jencks Acts materials before trial. Defendant's request that the government be compelled to disclose Jencks Act material prior to trial should be denied.

Defendant's motion also briefly mentions the government's obligation to disclose Brady material. Dkt. # 16, at 3-4. The government is obligated to disclose Brady material. Brady, 373 U.S. 83. However, the government maintains that it has met its discovery obligations and intends to continue to do so. Dkt. # 19, at 1. Defendant's motion neither identifies any Brady material that has not been disclosed, nor suggests that the government has failed to meet its

obligations under Brady or intends to do so in the future.  See generally Dkt. # 16.  While the government remains obligated to disclose Brady material, defendant's request that it do so is moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Dkt. # 14) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Early Disclosure of Jencks Material (Dkt. # 16) is **denied in part and moot in part**; it is denied as to defendant's request that the government be compelled to provide Jencks material prior to trial, it is moot as to defendant's request that the government disclose Brady materials without undue delay.

**DATED** this 2nd day of July, 2014.

*[Signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE